UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ICILIO WILLIAM BIANCHI, JR., a/k/a
I. WILLIAM BIANCHI,

                                                       MEMORANDUM AND ORDER

                 Plaintiff,

                                                       CV 08-1984

     -against-

                                                       (Wexler, J.)

FLORISTS MUTUAL INSURANCE COMPANY,
a/k/a/ HORTICA-FLORISTS' MUTUAL
INSURANCE COMPANY,

                 Defendant.
----------------------------------------------------------------X
APPEARANCES:

    FARLEY & KESSLER, P.C.
    BY: CARY DAVID KESSLER, ESQ.
    Attorneys for Plaintiff
    410 Jericho Turnpike, Suite 315
    Jericho, New York 11753

    RAWLE & HENDERSON LLP
    BY: LAURA JEAN PROCIDA, ESQ.
    Attorneys for Defendant
    14 Wall Street, 27th Floor
    New York, New York 10005-2101

WEXLER, District Judge

In this action Plaintiff Icilio William Bianchi, Jr. ("Plaintiff" or "Bianchi"), seeks a judgment declaring that the defendant insurance company, Florists' Mutual Insurance Company ("Florists' Mutual" the "Defendant" or the "Insurance Company") is obligated to defend and indemnify Plaintiff in connection with a claim by the New York State Department of Environmental Conservation (the "DEC") that Plaintiff is responsible for the clean up of a

1

hazardous waste site. Presently before the court is the motion of the Defendant Insurance Company for summary judgment declaring that it has neither the duty to defend nor indemnify Bianchi. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

I. The Parties and the Claim of the DEC

The facts set forth below are those not in dispute drawn from the Plaintiff's complaint as well as the now-completed discovery.

Plaintiff is an individual residing in this district. Defendant is an insurance company that has specialized in the issuance of policies of insurance to individuals and businesses engaged in the florists' and flower growing businesses. Plaintiff's parents, who are now deceased, were shareholders in a commercial flower growing business known as "IW Bianchi, Inc." (hereinafter "Bianchi, Inc.") from approximately 1929 through 1988.

In a letter dated November 27, 2007, the DEC advised Plaintiff that the site where Bianchi, Inc. formerly did business had been identified as an inactive hazardous waste site (the "Site"). The letter further informed Plaintiff of the DEC's belief that Plaintiff was the majority shareholder in Bianchi, Inc. As such, Plaintiff was identified as a responsible party, required to finance remedial work at the Site. The letter demanded payment of monies that may be expended by the DEC for the investigation and remediation of the Site, as well as all interest recoverable under the applicable federal law.

After receipt of the DEC letter, Plaintiff's counsel contacted the Defendant Insurance Company, identifying Florists' Mutual as the insurer for Bianchi, Inc. The letter states that Plaintiff was neither the owner of the Site nor an owner or shareholder in Bianchi, Inc. The letter

2

further states that it was written to place Florists' Mutual on notice of the of the DEC claim. Plaintiff thereafter commenced this action seeking defense and indemnification from Florists' Mutual in connection with the DEC claim for remediation of the Site.

II.     The Motion for Summary Judgment

Presently before the court is the motion of the Insurance Company for summary judgment declaring it has neither the duty to defend nor indemnify Plaintiff. Defendant acknowledges that it may have been the insurer of Bianchi, Inc. for certain unspecified years when the company was in existence. It argues, however, that because neither party is in possession of any document evidencing the existence of any policy, Plaintiff cannot sustain his burden of proving the existence of any particular policy of insurance covering the loss asserted. Plaintiff does not dispute that he is not in possession of any policy of insurance. He argues, however, that he has raised an issue of fact as to the existence of a policy that is sufficient to defeat summary judgment. After outlining relevant legal principles the court will turn to the merits of the motion.

## DISCUSSION

I.      Legal Principles

   A.    Summary Judgment Standards

To obtain summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the party seeking judgment must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Donohue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. McLee v.

3

Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

B. The Burden of Proving the Existence of a Policy of Insurance

The parties agree that it is the law of the State of New York that applies. That law provides that a plaintiff bears the initial burden of showing: (1) existence of an insurance contract with the defendant and, (2) that the policy potentially covers the loss asserted. Roundabout Theatre Co., Inc. v. Continental Casualty Co., 751 N.Y.S.2d 4, 7 (1st Dep't. 2002). Once these elements are established, the burden shifts to the insurer to prove a lack of coverage by establishing that exemptions or exclusions in the policy apply. Id.

Where, as here, a plaintiff asserting coverage is not in possession of a policy, its existence may be proven by resort to secondary evidence. Burt Rigid Box, Inc. v. Travelers Property Casualty Corp., 302 F.3d 83, 91 (2d Cir. 2002). Such secondary evidence may be relied upon only where the court is convinced that there has been a "diligent but unsuccessful" search for the policy. Id. at 92. After the court decides that resort to secondary evidence is appropriate, the issue on summary judgment is whether plaintiff has come forward with evidence sufficient to create an issue of fact as to existence of, and coverage afforded by, the policy.

The level of proof required to prove the existence of a lost policy is a matter the parties argue to be in dispute. In Boyce Thompson Institute for Plant Research, inc. v. Insurance Company of North America, 751 F. Supp. 1137 (S.D.N.Y. 1990), the district court held that the existence, execution, delivery and contents of a lost policy must be proved by "clear and convincing" evidence. Id. at 1140. This standard was rejected by the New York County Supreme Court in Gold Fields American Corp. v. Aetna Casualty and Surety Company, 661 N.Y.S.2d 948, 951 (N.Y. County 1997). Rejecting the Boyce analysis, that court adopted a

4

preponderance of the evidence standard in lost policy cases. That standard has been adopted by at least one federal district court. See Employers Ins. of Wausau v. Duplan Corp., 1999 WL 777976 *23 (S.D.N.Y. 1999) (plaintiff required only to submit proof that existence of the policy is "more likely than not").

In Burt Rigid Box, Inc. v. Travelers Property Casualty Corp., 302 F.2d 83 (2d Cir. 2002), the Second Circuit noted the dispute as to the proper level of proof to apply in lost policy cases, but declined to decide the issue. Instead, the court held that the burden in that case was met, without regard to the level of proof. Id. at 86 (holding that even under the more stringent "clear and convincing" burden of proof, plaintiff proved the existence of the lost policy). The court here will take a similar approach, and apply the preponderance of the evidence standard to the opposite question that was before the court in Burt Rigid, i.e., whether an issue of fact is created as to the existence of a policy covering the asserted claim. Thus, the court will determine whether Plaintiff has created an issue of fact as to whether he will be able to show at trial that it is more likely than not that there exists a policy covering the present coverage dispute. The court turns to analyze the facts presented, and to dispose of the motion.

II.     Facts Regarding the Bianchi Business and the Claim of Coverage

Bianchi, Inc. was engaged in the commercial flower growing business in East Patchogue, New York, from approximately 1928 through approximately 1988. The business and property where the business was located was thereafter sold to a business partner of the Plaintiff, who attempted to continue the flower growing enterprise. In or around 1992, when it became clear that the business was not to be carried on, the corporation was dissolved. Plaintiff was never a shareholder in his parents' business, but was employed by that business in different capacities

from approximately 1952 until 1988.

The parties agree that despite their best efforts, neither is able to locate any physical policy of insurance issued by Florists' Mutual covering the business of Bianchi, Inc. Plaintiff states that all business files of Bianchi, Inc., including any policies of insurance, have been destroyed. Specifically, Plaintiff testified that he believed that any such files were held by his sister for a period of time and destroyed approximately seven years after the corporation was dissolved.

Plaintiff's claim of coverage is based upon his stated belief that his parents' business was covered by policies issued by the Defendant during the 1960's, 1970's and 1980's. Plaintiff bases his belief as to the existence of such coverage upon discussions he states that he had with his parents regarding the subject of their insurance. Plaintiff also testified as to his belief that in or around 1986 or 1987, his parents changed their insurance coverage from Florists' Mutual to a different insurer, the Farm Family Insurance Company.

Aaron Jude Ankrom ("Ankrom"), a representative of Florists' Mutual, testified on behalf of the Defendant. Ankrom confirmed that the Company has been unable to locate any policies or declaration sheets indicating coverage for Bianchi, Inc. When asked to detail all efforts made by Florists' Mutual to locate any policies of insurance sold to Bianchi, Inc., Ankrom testified that the computer system was searched. That search led Ankrom to entries under the names "Bianchi Orchids" or "I.W. Bianchi doing business as Bianchi Orchids." Ankrom stated that with the exception of print outs of his computer screens, Florists' Mutual is not in possession of any documents referring to any particular policy of insurance issued to Bianchi, Inc.

Ankrom testified that he was personally aware that Florists' Mutual sold general

commercial liability policies to greenhouses, florists and growers since as early as the 1970's, but did not possess personal knowledge as the earlier issuance of policies. When questioned about his company's use of pollution exclusion clauses, Ankrom stated that could not state with certainty when those clauses began to be used. Although he could not specify an exact date, Ankrom stated his belief that Florists' Mutual sold insurance in New York State as early as 1974, but was unable to state the exact type of policy that was sold. Ankrom noted that the company's document retention policy called for the retention of documents for a period of seven years prior to destruction. According to Ankrom, the seven year period was adopted throughout the United Stated to comply with the laws of the State of California, which provide for most stringent document retention laws of any given state.

Ankrom, who has been employed by the Defendant Insurance Company since approximately 2003, had no knowledge of any particular policies of insurance ever having been issued to Bianchi, Inc. He did, however, acknowledge his belief that Florists' Mutual had, "at some point in time," issued a policy of insurance to Bianchi, Inc., but stated that Defendant was not in possession of information indicating how many years Bianchi had coverage with Florists' Mutual. Ankrom further stated that he could not testify as to the type of policy that was issued, and did not agree that such policy was necessarily a commercial general liability policy. Nor could Ankrom state with any certainty whether any such policy would have contained a pollution exclusion clause.

Kenneth Krieg ("Krieg"), the Chief Operating Officer of the Insurance Company also testified at deposition. Krieg testified that employees at Florists' Mutual searched for, but did not find any files of Bianchi, Inc. Krieg did testify, however as to a computer entry indicating that

Bianchi, Inc. was insured by Florists Mutual at some point in time. That entry indicated that the account with Defendant was closed, and that there were no policies in effect with respect to Florists' Mutual as of August 26, 1985. The computer entry about which Krieg testified notes an account number (but not a policy number) linked to the Bianchi account. That number is 0613755. When asked whether the "55" in the account number referred to the year in which the account was opened, Krieg testified that he had no knowledge of the company ever using such a system, and reiterated that he could not state with any certainty when Bianchi, Inc. was insured by Florists' Mutual. There was also testimony regarding a computer notation assigning 1900 as the year in which the Bianchi account was opened. It is clear, however, that this date did not reflect any account opening, but was an arbitrary date assigned to all accounts opened prior to the date when computer records were kept. Like Ankrom, Bianchi could not testify with any certainty as to when the company started using pollution exclusion clauses in its liability policies.

Also before the court is the deposition of Vincent Daley ("Daley"), a non-party who is an insurance broker. Daley was, at all relevant times, an insurance agent for Farm Family Insurance Companies – the company that began insuring Bianchi, Inc. in or around 1986. Daley first became acquainted with Bianchi, Inc. in 1985, when he approached Plaintiff's parents to try to sell them insurance. Daley testified that he knew that Bianchi, Inc. was insured by Florists' Mutual in 1986 when he met with Plaintiff's parents. At that time Daley reviewed the policies, and discussed with Plaintiff's father the possibility of changing insurers to the company that Daley represented. Daley stated that he recalled personally reviewing Florists' Mutual policies from 1984, 1985 and 1986. Daley stated that he had no idea as to whether Florists' Mutual

insured Bianchi, Inc. prior to 1984, but stated that Plaintiffs' father told him that he was insured by Florists' Mutual "for a lifetime." As to the meaning of "for a lifetime," Daley testified that he had no idea as to the meaning of the term. Because his discussions with Plaintiff's father focused on glass and crop coverage issues, Daley was unable to testify as to any other particular provisions of the Florist's Mutual policies. He did state his belief, however, that the policies were "occurrence," policies, meaning that the policies would cover incidents that occurred during the policy periods. Daley stated that he could not testify whether the Florists Mutual Policies contained a pollution exclusion clause. While Daley had copies of the declaration sheets of the Florists' Mutual policies in his possession at one time, he testified that those documents were destroyed in either 2001 or 2002, due to the high cost of retaining such files. Farm Families began insuring Bianchi, Inc. from late in 1986 until the business was closed in approximately 1988.

III. Disposition of the Motion

At the outset, the court holds that there has been a "diligent but unsuccessful" search for Florists' Mutual policies, and therefore secondary evidence may be considered to prove the their existence. See Burt Rigid, 302 F.3d at 92. As noted, the court will approach this case as governed by the less stringent preponderance of the evidence standard. The issue now becomes whether Plaintiff has created an issue of fact as to whether a jury could find that it is more likely that not that Bianchi, Inc. had any policies of insurance with Florists' Mutual, and whether any such policy requires the company to defend and/or indemnify Plaintiff in connection with the claim of the DEC. Because, the court finds the quality of evidence with respect to policies issued prior to 1984 different from that of those issued after that date, the court will consider these time

9

periods separately, beginning with the earlier group.

A. Policies Prior to 1984

The court holds that no issue of fact has been created regarding the existence of any policies with Florists' Mutual prior to 1984. The only evidence before the court in connection with such policies is the Plaintiffs' assertion that he believed that his parents' business was always insured by Florists' Mutual, and Defendant's admission that it insured Bianchi, Inc. at some point in time. There is absolutely no paper evidence supporting the claim of existence of any particular policy during the time when Bianchi, Inc. began doing business in 1928 until it began purchasing insurance from Farm Families Insurance Company in 1986. Even if the court were to assume that Florists' Mutual insured Bianchi, Inc. prior to 1984, any conclusions regarding the broad questions of the scope and nature of those policies would be pure speculation. For example, the jury would be called upon to decide, <u>inter alia</u>, the term, coverage, exclusions and renewal provisions of each policy issued over decades. Once these issues were decided, the jury would next be required to determine whether, for any given policy period, Plaintiff was a covered party. The level of such speculation is simply too high for a jury to undertake, and the court declines to allow a jury to do so.

The court is aware that even Defendant's representatives recall insuring Plaintiff's parents' business "at some time." Reliance on this admission, along with Plaintiff's belief that he overheard his parents' conversations on this issue, however, is not enough evidence for the claim to pass even the preponderance of the evidence standard. Comparison of the evidence here with that in cases allowing lost policy claims to go forward allows the court to reach this conclusion. Indeed, the level of proof relied upon here is significantly less than that held to

constitute sufficient secondary evidence to support the claim that a policy exists.

In Burt Rigid, for example, the court's conclusion that coverage should be afforded to plaintiff was support by a "plethora" of secondary evidence. Burt Rigid, 302 F.3d at 92. Such evidence included business documents showing exact policy numbers and dates of coverage, acknowledgment by an insurance company representative that he recognized the policy numbers, financial statements indicating the allocation of funds to pre-pay comprehensive liability insurance policies for specific time periods, insurance company records indicating claims and payment with respect to policies of insurance bearing the same account numbers as those set forth in plaintiff's records, and references indicating the specific type of insurance issued. Id.

The evidence here is similarly less than that found to satisfy the preponderance of the evidence standard relied upon in Gold Fields. There, the court was able to conclude that an issue of fact existed regarding the issuance of policies for specific time periods. Among the evidence in that case were documents evidencing the insurance company's payments of claims, which documents noted particular policy numbers. Gold Fields, 661 N.Y.S.2d at 951. The level of proof with respect to policies issued prior to 1984 simply does not rise to the level of either Burt Rigid or Gold Fields.

Plaintiff makes much of Defendant's document retention policy, arguing that the Company should be responsible for defending Plaintiff because it destroyed inactive files. The court, however, cannot fault Defendant for destroying records of policies that were inactive for decades. There is no evidence of the destruction of any document regarding a current claim, and the evidence here makes clear that it is a common business practice to destroy old and inactive business files, especially, as testified by Daley, in light of the high cost of retaining such

documents.

In sum, even if the court were to assume the truth of Plaintiff's testimony that his parents' business was insured by Florists' Mutual during the decades of the 1950's through 1984, the evidence here fails to create a question of fact sufficient to establishing that any such particular policy potentially covers any claim against Plaintiff by the DEC. In the absence of any document evidencing the terms of over thirty years of policies, it would be pure speculation to rule on the terms of those policies, and whether they would cover Plaintiff (who was neither an owner or shareholder in his parents' business) for claims asserted by the DEC.

B.   Policies in Effect for 1984, 1985 and 1986

With respect to policies in effect from 1984 through the time in 1986 when Bianchi, Inc. began purchasing its insurance coverage from Daley's company, the evidence is sufficient to preclude summary judgment in Defendant's favor. As noted, all parties agree that Bianchi, Inc. was, in fact, insured by Florists' Mutual at some time. It is Daley's testimony regarding policies written from 1984 through 1986, that pushes the evidence beyond mere speculation.

Daley, a unbiased third-party, has a very clear recollection of reviewing particular policies for these years. While he does not have records of such policies (such records having been destroyed pursuant to his own document retention policy), he is the sole witness to be able to testify as to having viewed actual policies covering particular periods of time. Therefore, the court holds that with respect to the policies about which Daley testified, the evidence is sufficient to defeat summary judgment. The court will allow the case to proceed with respect to the claim that Florists' Mutual issued policies of insurance for the years 1984 through the time in 1986 when coverage was taken over by the company that Daley represented.

The court makes no finding as to whether, in fact, Florists' Mutual insured plaintiffs' parents business during the years 1984 through 1986. Nor does it make any findings as to the terms of those policies, and whether they obligate the defense and/or indemnification of Plaintiff with respect to the claim of the DEC. The court holds only that there is a sufficient question of fact presented such that Plaintiff may argue the existence of such policies, as well as their terms and coverage to the jury. Defendant will have the opportunity to argue against the existence of such policies and the scope of their coverage. It will be for Plaintiff to prove at trial that these policies existed, and that any such policy obligates Defendant to defend and/or indemnify him in connection with the claim of the DEC.

## CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. The motion is granted to the extent that any claim that Defendant insured Plaintiff for occurrences prior to 1984 is dismissed. Plaintiff may proceed to a jury as to whether there existed any policy of insurance for the years 1984 through 1986, and whether any such policy covers Plaintiff for the claim of the DEC regarding the remediation of a hazardous waste site located at the former property of the business of I.W. Bianchi, Inc. The Clerk of the Court is directed to terminate all motions pending herein. Counsel are reminded that jury selection in this matter is scheduled for February 22, 2010, at 8:30 A.M., with trial to commence on the following day.

SO ORDERED:

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
September 24, 2009